1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.A. and S.A., minors, by and through their guardians BRETT ARONSON and KIRSTEN ARONSON; O.S., minor, by and through his guardians TIFFANY AFLAKI and TANNER SHARTEL; and K.J.T.W. and K.L.T.W., minors, by and through their guardians KELSI THORP and PETER WILSON, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>     v.<br><br>DISNEY WORLDWIDE SERVICES INC., a corporation; and DISNEY ENTERTAINMENT OPERATIONS LLC, a limited liability company,<br><br>                  Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

Minor Plaintiffs E.A., S.A., O.S., K.J.T.W., and K.L.T.W (collectively, "Minor Plaintiffs") or ("Plaintiffs"), by and through their guardians and undersigned counsel, hereby allege as follows against Defendants Disney Worldwide Services Inc. and Disney Entertainment Operations LLC (together, "Disney" or "Defendants"):

## I.    NATURE OF THE CASE

1.    This is a class action arising out of Disney's intrusive and unlawful business practices targeting millions of children under the age of 13 in the United States, in clear violation

CLASS ACTION COMPLAINT - 1

of both legal standards and widely accepted societal norms.

2.      Disney is a globally recognized media conglomerate that produces and distributes highly popular child-directed content, including through its official channels on YouTube, a video-sharing platform owned by Google, LLC.

3.      Despite creating and uploading animated videos, cartoons, movie clips, and other content clearly directed at children under 13, since 2020, Disney has failed to designate its videos as "made for kids" on YouTube's platform, thereby enabling the collection of personal information from children—including both persistent identifiers such as cookies and device IDs and sensitive data like identity and location information—without providing notice to parents or obtaining verifiable parental consent.

4.      As a result, Disney enables YouTube's algorithm to deliver targeted advertising to children watching Disney's content, generating substantial advertising revenue for Disney and its affiliates, all at the expense of children's privacy and in direct contravention of state and federal law.

5.      Disney's conduct constitutes an invasion of the right to privacy for millions of children in the United States. Minor Plaintiffs bring claims on behalf of themselves and all others similarly situated children under the age of 13 injured by Disney's grossly deceptive conduct.

## II.      JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 as well as pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members, including Plaintiffs, are citizens of a different state than Defendants.

7.      Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendants conduct their affairs in this District, is headquartered in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

8.     This Court has personal jurisdiction over Defendants because Defendants intentionally availed themselves of this jurisdiction by choosing to do business in this District.

### III.     PARTIES

9.     Minor Plaintiffs E.A. and S.A. are citizens domiciled in Colorado. On various dates between 2020 and the present, Plaintiffs E.A. and S.A. watched child-directed content uploaded by Disney on the YouTube platform.

10.     Minor Plaintiff O.S. is a citizen domiciled in California. On various dates between 2020 and the present, Plaintiff O.S. watched child-directed content uploaded by Disney on the YouTube platform.

11.     Minor Plaintiffs K.J.T.W. and K.L.T.W. are citizens domiciled in Washington. On various dates between 2020 and the present, Plaintiffs K.J.T.W. and K.L.T.W. watched child-directed content uploaded by Disney on the YouTube platform.

12.     Upon information and belief, Minor Plaintiffs viewed child-directed content that was designated by Disney as "not made for kids," enabling YouTube to subsequently collect Minor Plaintiffs' sensitive personal information.

13.     Defendant Disney Worldwide Services Inc. ("Disney Worldwide") is a Florida corporation with its principal place of business at 1375 Buena Vista Drive, Lake Buena Vista, Florida 32830. Disney Worldwide also transacts business in King County, Washington, including at 925 4th Avenue, Seattle, Washington 98104. Disney Worldwide is a wholly owned subsidiary of the Walt Disney Company and serves as a central business and administrative services provider for Disney's various media and entertainment subsidiaries.

14.     Defendant Disney Entertainment Operations LLC ("Disney Entertainment") is a Florida limited liability company, with its principal place of business at 500 Buena Vista Street, Burbank, California 91521. Disney Entertainment is primarily responsible for the creation, distribution, and monetization of Disney's entertainment content, including video programming made available on platforms such as YouTube.

15.     Disney Worldwide and Disney Entertainment are agents and instrumentalities of

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

the Walt Disney Company and operate under its direction and control.

## IV.    COMMON FACTUAL ALLEGATIONS

**Disney's Relationship with YouTube**

16.    The Walt Disney Company is one of the largest and most influential media and entertainment conglomerates in the world. The Walt Disney Company operates through numerous subsidiaries (including Defendants) and divisions which are engaged in film and television production, streaming services, theme parks, consumer products, and digital media.

17.    Disney has built its empire by aggressively targeting children as a primary audience and commercial demographic. Through its vast portfolio of globally recognized characters, franchises, and branded content—including Disney Princess, Pixar, Marvel, and Star Wars—Disney markets itself as a trusted source of family entertainment while simultaneously leveraging its content to cultivate brand loyalty from a young age.

18.    Disney's business model is heavily dependent on capturing and monetizing the attention of children across multiple platforms, including through television, streaming, merchandise, theme parks, and digital media. Central to this strategy is the use of engaging, child-directed content designed to attract and retain young viewers—often without meaningful parental oversight—allowing Disney to generate billions in revenue annually through advertising, licensing, and data-driven marketing.

19.    Despite its wholesome public image, Disney operates with the precision of a data-driven advertising enterprise, consistently prioritizing profit over children's privacy and well-being.

20.    YouTube LLC operates YouTube, an online video-sharing platform. YouTube allows its visitors and/or users to view and/or interact with user-generated content that has been uploaded by registered YouTube users on YouTube.

21.    YouTube videos are viewable by anyone who accesses YouTube by visiting www.youtube.com or using the YouTube mobile or streaming device app. Individuals do not have to be registered with or signed into YouTube, to view YouTube videos.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

22.     YouTube requires that videos intended to be available to the public be uploaded through a channel.

23.     Each channel has a unique account and serves as a centralized page where all of a particular content creator's videos, playlists, branding, and audience engagement tools are hosted. Content creators such as Disney have full control over the videos they upload to their channels, including the ability to set titles, thumbnails, descriptions, age designations, and monetization preferences.

24.     Users may find videos on YouTube by navigating to a particular channel's homepage, or users may come across videos uploaded to a particular channel without interacting directly with that channel.

25.     Disney maintains a direct and lucrative commercial relationship with YouTube. Disney operates many official YouTube channels, including but not limited to: Disney, Disney Channel, Disney Junior, and various franchise-specific channels, through which it uploads, promotes, and monetizes video content.

26.     During the relevant period of 2020 through the present ("Class Period"), Disney has operated and uploaded tens of thousands of videos to more than 1,250 YouTube channels.

27.     Users are able to easily discover Disney content on YouTube through YouTube's search function, autoplay suggestions, and algorithmically-driven recommendations, which often promote similar or related content once a child begins viewing a Disney video. Young children frequently access this content directly, by searching for characters or titles they recognize, or indirectly through embedded videos in third-party websites, smart TVs, tablets, devices, or the YouTube app.

28.     Disney's videos are extremely popular on YouTube. According to a complaint filed against Disney by the Federal Trade Commission ("FTC") on September 2, 2025, videos on just three dozen of Disney's channels resulted in tens of millions of hours watched worldwide and hundreds of millions of views in the United States in just three months of 2019. The amount of time viewers spent watching videos on these channels soared to over 100 million hours

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

worldwide, with approximately 1.2 billion views in the United States alone, during three months of the early COVID-19 pandemic period of 2020.

29.     Indeed, in many households, Disney videos play continuously via autoplay, leading to extended viewing sessions often without direct parental supervision. These viewing patterns provide high engagement and view counts, generating substantial advertising revenue for Disney while also facilitating the collection of viewer data, including persistent identifiers, unless proper child-directed settings are applied.

**Data Collection and Advertisement Techniques**

30.     YouTube collects personal information from individuals who assess YouTube for the purpose of showing behavioral advertising to those individuals.[1] That personal information includes a person's user activity (searches run, videos watched, views and interactions with content and ads, etc.), location information (GPS, internet protocol ("IP") address, device sensor data, and data from devices located near a user), and unique identifiers (cookie IDs, advertising IDs, device IDs, and others). That data is collected and stitched into a profile of a user which gives YouTube (and whoever YouTube shares that information with) the most accurate, up-to-date snapshot of a user's attributes and behaviors.

31.     YouTube then uses this information to deliver targeted advertisements to YouTube video viewers based on preferences inferred from their profiles.

32.     Advertising on YouTube can use either behavioral or contextual targeting. Behavioral targeting is the delivery of advertisements to individuals based on that user's personal information, which is tracked across multiple websites, apps, and devices. The information YouTube collects is incorporated into an algorithm which infers which types of advertisements are likely to have the greatest impact on the user associated with the information (i.e., are most likely to be clicked on).

33.     At all relevant times, Disney actively participated in YouTube's partner program,

---

[1] As discussed below, beginning in the fall of 2019, YouTube announced it was changing the way it treated data for children's content and implementing a "made for kids" designation.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

which is a monetization agreement where content creators, like Disney, receive a significant share of advertising revenue generated from videos of their content on YouTube, including pre-roll, mid-roll, banner, and targeted display advertisements.

34. The YouTube partner program allows Disney to generate revenue on its videos by receiving a portion of YouTube's advertising revenue generated from advertisements that YouTube places with Disney videos. Indeed, upon information and belief, Disney is widely regarded as a preferred content partner—a designation given to top-tier advertisers and premium content producers. This status offers additional monetization benefits and brand safety assurances.

35. YouTube effectively enables Disney to benefit from and indirectly access personal data—especially behavioral data—collected from viewers, including children. Both Disney and YouTube prefer behavioral advertising because it is widely regarded as more effective than contextual targeting. Thus, advertisers pay YouTube more to run behavioral advertising, and YouTube in turn pays Disney more for allowing YouTube to run behavioral advertising on Disney's channels than YouTube would have paid Disney for only allowing contextual advertising. In other words, both YouTube and Disney have a strong financial incentive to use behavioral advertising.

36. As a partner with YouTube, Disney has access to YouTube's content management, audience analytics, and monetization tools including settings related to behavioral advertising and indicating whether content is directed at children under the age of 13.

**The Children's Online Privacy Protection Act ("COPPA")**

37. COPPA was enacted in 1998 by Congress to protect the safety and privacy of children online by prohibiting the unauthorized or unnecessary collection of children's personal information online by operators of Internet websites and online services. COPPA directed the Commission to promulgate a rule implementing COPPA. The Commission promulgated the COPPA Rule on November 3, 1999, under Section 1303(b) of COPPA, 15 U.S.C. § 6502(b), and Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553. The Rule went into effect on April 21, 2000. The Commission promulgated revisions to the Rule that went into effect on July

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

1, 2013. Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

38.     The COPPA Rule applies to any operator of a commercial website or online service directed to children that collects, uses, and/or discloses personal information from children, and to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children. The Rule requires an operator to meet specific requirements prior to collecting online, using, or disclosing personal information from children, including but not limited to:

    a.  Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents (Section 312.4(b) of the Rule, 16 C.F.R. § 312.4(b));

    b.  Posting a prominent and clearly labeled link to an online notice of its information practices with regard to children, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth in the Rule (Section 312.4(d) of the Rule, 16 C.F.R. § 312.4(d)); and

    c.  Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children (Section 312.5(a)(1) of the Rule, 16 C.F.R. § 312.5(a)(1)).

39.     The law defines "personal information" broadly to include not only names and contact details but also persistent identifiers such as cookies, IP addresses, device IDs, and other tracking technologies used for behavioral advertising.

40.     The FTC, which enforces COPPA, has made clear that COPAA applies not only to websites and apps that are directed to children, but also to general-audience platforms—like YouTube—when they have actual knowledge that child-directed content is being hosted.

41.     COPAA reflects a strong public policy interest in shielding children from invasive

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

data practices and commercial exploitation, and violations of the statute can result in significant civil penalties and injunctive relief.

**YouTube's "Made for Kids" Functionality**

42.     In 2019, the FTC brought a landmark enforcement action against YouTube and its parent company, Google LLC, for widespread violations of COPPA. The FTC alleged that YouTube knowingly collected personal information about children under the age of 13—including personal information used for behavioral advertising—without providing notice to parents or obtaining verifiable parental consent, as required by law. The complaint specifically cited YouTube's and its content creators' practice of hosting and profiting from content clearly directed at children, while falsely claiming it was a general-audience platform.

43.     As part of the FTC settlement, YouTube agreed to pay a then-record $170 million fine and implement systemic changes to its platform, including requiring content creators (those who produce content to upload to the platform), such as Disney, to designate whether the videos being uploaded are "made for kids."

44.     The FTC action made clear that both platform operators and content creators share responsibility under COPPA for protecting children's privacy, especially when monetizing child-directed content through advertising and data collection practices.

45.     Upon information and belief, YouTube communicated to its content creators that they would be required to tell YouTube if their content is "made for kids" in order to comply with the FTC agreement.

46.     YouTube relies on this designation to determine what functionality and advertising YouTube should make available on videos in compliance with COPPA.

47.     When a video is set as "made for kids," certain functionality is disabled by YouTube – with respect to that video – for example, comments, "autoplay on home," and targeted advertising are disabled. Playback in the Miniplayer, which allows a video to continue to play on a small screen as a user browses YouTube, is also disabled, as is the ability for a user to save a video to a playlist or to watch later. These features are disabled, in part, to prevent the collection

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

of personal information from children that would require operators to provide notice and obtain verifiable parental consent under the COPPA Rule.

48. In addition to these features being disabled, the designation of a video as "made for kids" also affects autoplay—when a video is marked as "made for kids" it will exclusively autoplay to other videos marked as "made for kids" and not play videos designated as "not made for kids."

49. As a result of the settings and related functionality, when videos that are Child directed are not designated as "made for kids," advertising is targeted to children using persistent identifiers.

50. Content creators were instructed by YouTube that, depending on the Amount of content "made for kids" on their channels, content creators could set their audience controls at either the channel level or the video level, meaning YouTube settings allowed content creators to either mark the entire channel as "made for kids" or review the setting for every individual video and then designate each video as either "made for kids" or "not made for kids."

51. If a content creator set an audience at the channel level as "not made for kids," then when an individual video was uploaded to that channel, the video was designated by default as "not made for kids" and required the content creator to manually change that designation during the upload process to reflect the content of the particular video.

52. Content creators, including Disney, were warned that failure to set its content accurately could face compliance issues with the FTC or other authorities.

**Disney's Failure to Appropriately Mark Child-Directed Videos**

53. Critically, Disney had the ability—and the mandatory duty—to designate its videos as "made for kids" under YouTube's compliance framework following the FTC's 2019 COPPA enforcement action.

54. Disney operates and uploads videos to channels that it has designated as "made for kids" as well as to channels it has designated as "not made for kids." Upon information and belief, per corporate policy, Disney sets the audience designation as either "made for kids" or "not made

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

for kids" at the channel level and does not change the designation for individual videos uploaded to that channel.

55.     Under this channel level policy, when a video is uploaded to a channel Disney has designated as "not made for kids," Disney allows the video to remain at the default designation of "not made for kids," even if the video were child-directed.

56.     Despite producing and uploading vast amounts of content that is unmistakably directed at children under the age of 13, Disney knowingly fails to make these designations, enabling YouTube to collect personal information from child viewers and provide Disney with information that assists Disney with its targeted advertising in violation of COPPA.

57.     Upon information and belief, child-directed videos that Disney designated as "not made for kids"  on YouTube include videos available on the Pixar channel, the Disney Plus channel, the Walt Disney Studios channel, the Disney Animation Studios channel, the Disney Movies channel, the Disney on Ice channel, the Disney channel, the Oh My Disney channel, the Disney on Broadway channel, and the Disney D23 channel.

58.     The videos on these channels are unmistakably directed toward children under the age of 13, as is evident from their content, presentation, and intended audience. These videos frequently feature animated characters like Mickey Mouse, Elsa, Moana, Lightning McQueen, and other iconic figures from Disney's catalog that are specifically marketed to and beloved by young children.

59.     These videos often include bright, colorful visuals, simple language, sing along songs, nursery rhymes, basic educational themes, and storylines designed to appeal to preschoolers and early elementary-age viewers. In many cases, the characters themselves address children directly or invite interaction, further reinforcing their child-directed nature.

60.     The cumulative effect of these elements – combined with Disney's own Branding as a provider of family and children's entertainment—makes it objectively clear that these videos fall squarely within the definition of "child-directed" under COPAA and applicable FTC guidance.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

61.    Disney's failure was not accidental or technical; it was a deliberate business decision that prioritized deliberate collaboration that prioritized advertising revenue over children's privacy rights. In fact, in June 2020, YouTube notified Disney of over 300 videos that were not appropriately marked "made for kids," despite child-directed subject matters featuring characters from The Incredibles, Coco, Toy Story, Tangled, and Frozen. Disney was notified that YouTube was reclassifying these videos as "made for kids," but Disney refused to revise its policy.

62.    Disney's failure was also not the result of ambiguity, but of calculated avoidance of regulatory compliance.

63.    On September 2, 2025, the FTC formally accused Disney of violating COPAA by failing to properly mark certain YouTube videos as "made for kids." According to the FTC, this mislabeling – including content from obvious child-directed videos—allowed the collection of personal data from children under 13 years old without verifiable parental notification or consent and enabled targeted advertising through YouTube that is prohibited under COPPA.

64.    FTC chairman Andrew Ferguson sharply criticized Disney's handling of child-directed content on YouTube, stating that the enforcement action "penalizes Disney's abuse of parents' trust." The FTC is committed to enforcing COPAA, reflecting Congress's intent to ensure that parents, rather than corporations like Disney, make decisions regarding the collection and use of their children's personal information.

**The Collected Data is Sensitive and Valuable**

65.    Although the FTC has taken enforcement action against Disney for its violations of COPPA, such regulatory action does not provide compensation or redress for the children and families directly harmed by Disney's misconduct. Minor Plaintiffs' and Class Members' personal information was unlawfully collected and monetized without parental consent. These children suffered concrete and particularized injuries – namely, the loss of statutory privacy protections, exposure to surveillance and targeted advertisement, and the exploitation of their online behavior for corporate profit.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

66.     Disney's failure to accurately designate child-directed videos as "made for kids" results in YouTube collecting personal information and placing targeted advertisements on child-directed videos on Disney's behalf. In addition to targeted advertising, when videos are not properly marked as "made for kids," other features that YouTube routinely disables on "made for kids" videos are available, including the ability to save videos and the ability to comment on videos. YouTube disables features on "made for kids" videos and channels in part because they would rely on the collection of user data to work properly.

67.     Minor Plaintiffs and Class Members were harmed when Disney enabled YouTube to collect their personal information. Reasonable guardians, including the guardian of the Minor Plaintiffs, would not have allowed their children to access Disney channels on YouTube had they been aware of the extent to which children's privacy would be violated as a result.

68.     The personal information of children holds substantial and growing value in today's data-driven economy. Even at a young age, children generate digital footprints – through viewing habits, device usage, preferences, and engagement patterns – that are uniquely attractive to advertisers. Persistent identifiers can be used to track a child's behavior across platforms, building detailed profiles that enable microtargeting and influence over future customer behavior. This data not only fuels advertising revenue, but helps companies shape long-term brand loyalty, making children a particularly lucrative and vulnerable target.

69.     Unlike adults, children are less capable of understanding the implications of data collection or targeted marketing, and their information is often harvested without meaningful consent. Indeed, Recognizing the sensitivity and value of this data is the reason Congress enacted COPPA. When companies like Disney disregard those protections, they do not merely violate the law – they profit from the unlawful exploitation of children's identities and attention to the detriment of both privacy and public trust.

70.     Indeed, there is a market for data like the data collected on the YouTube platform when the "not for kids" notation is selected by Disney. Plaintiffs and Class Members suffered pecuniary losses when their data was collected and shared with third parties in part because of the

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

value of the data itself. Without the freedom to control what becomes of their data, children are unable to maintain the value of their personal data, which will remain with them for the rest of their lives.

71.     The value of children's personal and health information is axiomatic. For example, when cybercriminals steal such information, like the information Disney enabled to be collected through YouTube, the criminals face huge fines and lengthy prison sentences. Organizations across every sector use and monetize consumer data to increase profits.

72.     And the value of such information as a commodity is measurable. In monetary terms, academic research from institutions such as MIT and Carnegie Mellon has estimated that individual user data can be worth $240 or more per year to advertisers, with children's data commanding a premium due to its potential for early brand capture and influence.[2]

73.     There is also a market for data in which consumers can participate. Personal information has been recognized by courts as extremely valuable. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) ("Neither should the Court ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy. Many companies, like Marriott, collect personal information. Consumers too recognize the value of their personal information and offer it in exchange for goods and services."). Google has recognized the value of user data and even instituted a pilot program to pay users $3 per week to allow Google to track them online.[3]

74.     Several companies have products through which they pay consumers for a license to collect or track their data. Nielsen, UpVoice, HoneyGain, and SavvyConnect are all companies that pay for browsing historical information. Facebook also has paid users for their digital information, including browsing history. Until 2019, Facebook ran a "Facebook Research" app

---

[2] Acquisti, Allesandro et al., The Economics of Privacy, 54 J. Econ. Lit. 442, 444 (2016); *see also* Egelman, Serge et al., What's the Value of Your Data? (Carnegie Mellon CyLab 2020), available at
https://www.cylab.cmu.edu/news/2020/20/whats-the-value-of-your-data.html.
[3] *See* Josh Sidorowicz, *Yes, Google will pay you to track what you do on your phone*, WTSP Tampa Bay 10 (Apr. 11, 2024), https://www.wtsp.com/article/news/verify/google-tracking-study-payment-verify/67-1cc2e9a3-f51b-489b-aef8-1477201c0c11 (last accessed July 1, 2025).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

through which it paid $20 a month for a license to collect browsing history information and other communications from consumers between the ages 13 and 35.

75.    Through its conduct and practices, Disney has unlawfully exploited the personal information of Plaintiffs and Class Members without their permission and without compensating them for the use of their assets.

76.    Plaintiffs and Class Members, through their guardians, had a reasonable expectation of privacy while engaging with Disney's YouTube channels because of societal norms as well as the implementation of laws such as COPPA, which were designed to protect children's privacy.

77.    Users young and old highly value their privacy when online. Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data. For example, *Consumer Reports* notes that 92% of Americans believe that internet companies and websites should be required to obtain affirmative consent before selling or sharing their data.[4]5

## PLAINTIFF'S SPECIFIC ALLEGATIONS

78.    Minor Plaintiffs were under the age of 13 years old between 2020 and September 10, 2025.

79.    At various times between 2020 and the present, Minor Plaintiffs accessed Disney's channels via the YouTube platform and viewed child-direct content.

80.    Upon information and belief, Minor Plaintiffs viewed videos that Disney did not designate as "made for kids." As a result, Minor Plaintiffs' data was collected and exploited for targeted behavioral advertising.

81.    Minor Plaintiffs' guardians were never notified that Disney had enabled the collection of their children's personal information for the purposes of targeted behavioral

---

[4] https://innovation.consumerreports.org/The-Evolution-of-Consumer-Attitudes-Toward-Online-Tracking_5.20.20_FINAL.pdf#:~:text=Following%20this%20reversal%2C%20a%20Consumer%20Reports%20survey,said%20that%20internet%20companies%20and%20websites%20should (May 2020) at 36.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

advertising.

82.    Minor Plaintiffs' guardians never provided consent of any kind for their children's information to be collected and used for targeted behavioral advertising on the YouTube platform.

83.    Minor Plaintiffs' guardian places significant value in their children's privacy and would not have consented to the collection of their children's data on Disney's channels. Minor Plaintiffs' guardians would not have permitted their children to access YouTube had they known that Disney was not abiding with internet laws designed to protect children.

## V.    CLASS ACTION ALLEGATIONS

84.    **Class Definition.** Pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), Plaintiffs seek certification of the following nationwide Class (the "Class" or the "Nationwide Class"):

> **All natural persons in the United States who, at any time between 2020 and September 10, 2025, were under 13 years old and watched child-directed content that was uploaded by Disney on YouTube and not marked as "made for kids."**

85.    Excluded from the Classes are Defendants; any parent, affiliate, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; Defendants' officers or directors; or any successor or assign of Defendants. Also excluded are any Judge or court personnel assigned to this case and members of their immediate families.

86.    Plaintiffs reserve the right to amend or modify the class definitions after having had an opportunity to conduct discovery.

87.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the Class is so numerous that joinder of all members is impracticable. While Plaintiffs do not know the exact number of Class Members, Plaintiffs believe the Class is comprised of hundreds of thousands of members. Class Members may be identified through objective means, including through Defendants' records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and/or published notice.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

88.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirements, this action involves common questions of law and facts as to all Class Members, which predominate over any questions affecting individual Class Members. Such questions of law and fact common to the Class include, but are not limited to: (a) whether Disney gathered the personal identifying information of Class Members; (b) whether Disney obtained verifiable parental consent before collecting the personal identifying information of Class Members; (c) whether Disney violated Plaintiffs' and Class Members right to privacy; (d) whether Plaintiffs and Class members are entitled to relief, including restitution and injunctive relief; and (e) whether Plaintiffs and Class members are entitled to damages or other monetary relief, and if so, in what amount.

89.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with rule 23(a)(3), Plaintiffs' claims are typical of the claims of the members of the Class. Disney's common course of conduct in violation of law as alleged herein has caused Plaintiffs and Class members to sustain the same or similar injuries and damages. Plaintiffs' claims are thereby representative of and coextensive with the claims of the Class.

90.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and, through their guardian, are committed to pursuing this matter against Defendants to obtain relief for the Class. Plaintiffs have no conflicts of interest with Class Members. Plaintiffs' Counsel are competent and experienced in litigating consumer class actions, including data privacy litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of the Class. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other Class Members.

91.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual Plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

92.     **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

93.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

94.     Finally, all members of the proposed Class are readily ascertainable. Defendants have access to information regarding the individuals who accessed their content. Using this information, Class Members can be identified and their contact information ascertained for the purpose of providing notice to the Class.

## VI.     CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Intrusion on Seclusion**

95.     Plaintiffs re-allege the foregoing allegations as if fully set forth herein.

96.     Plaintiffs' and Class Members' private affairs, concerns, and seclusion includes their interest in their personal information.

CLASS ACTION COMPLAINT - 18

97.     Plaintiffs' and Class Members' private affairs, concerns, and seclusion includes their interest in their personal information, which includes data points concerning their location and online activity.

98.     Plaintiffs' and Class Members' private affairs, concerns, and seclusion includes their interest in their personal information, which includes data points concerning their identity, location and online activity while using internet-connected devices.

99.     The content on Defendants' YouTube channels was clearly and unmistakably directed to children, and Defendants were well-aware of the demographic that made up the vast majority of their audience. Yet, Defendants failed to designate this content as "made for kids," thereby enabling the platform and its ad partners to secretly track, profile, and target young viewers for behavioral advertising—a practice that is both unlawful under COPPA and highly offensive to a reasonable person.

100.    As a result of the uniform conduct and practices alleged herein, Defendants intentionally intruded upon the seclusion of Plaintiffs' and Class Members' seclusion by improperly collecting and using their personal information without obtaining consent.

101.    As a result of the uniform conduct and practices alleged herein, Defendants intentionally intruded upon the seclusion of Plaintiffs' and Class Members' seclusion by improperly collecting and using their personal information without obtaining consent.

102.    Defendants intentionally intruded upon the seclusion of the Plaintiffs' and Class Members' seclusion by improperly collecting and using their personal information, without providing direct notice to their parents and obtaining verifiable parental consent, as required by COPPA.

103.    As a result of the uniform conduct and practices alleged herein, Defendants' intrusion upon seclusion of the Plaintiffs and Class Members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, academic studies detailing the harms of tracking children online, centuries of common law, scholarly literature on consumers' reasonable expectations, state and federal

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and the fines sought by the FTC predicated on Defendants' conduct.

104.    As a result of the uniform conduct and practices alleged herein, Defendants' intrusion upon seclusion of the Plaintiffs and Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms, because Defendants used the personal information for an improper purpose, including by targeting the Plaintiffs and members of the Class with advertising, in violation of COPPA.

105.    As minor children, Plaintiffs and members of the Class lacked the ability to form expectations about reasonable privacy; their parents and guardians, however, had a reasonable expectation of privacy in their children's online viewing activities, particularly given their children's ages and the nature of the content involved.

106.    Neither Plaintiffs nor Class Members, nor their parents and/or guardians, consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

107.    Neither Plaintiffs nor Class Members, nor their parents and/or guardians, consented to the collection and use of their personal information.

108.    Plaintiffs and members of the Class suffered actual and concrete injury as a result of Defendants' intrusion upon their seclusion.

109.    On behalf of themselves and Class Members, Plaintiffs seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits realized by Defendants as a result of their intrusion upon seclusion of Plaintiffs' and members of the Class's private affairs, concerns, and seclusion.

## SECOND CLAIM FOR RELIEF
### Invasion of Privacy

110.    Plaintiffs re-allege the foregoing allegations as if fully set forth herein.

CLASS ACTION COMPLAINT - 20

111.    The private affairs, concerns, and seclusion of Plaintiffs and Class Members include their interest in their personal information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

112.    The private affairs of Plaintiffs and Class Members include their behavior on their mobile devices and computers, as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants.

113.    The parents and guardians of Plaintiffs and Class Members have reasonable expectations of privacy in their children's mobile devices and their online behavior and activities generally, which constitute private matters.

114.    As a result of the conduct and practices alleged herein, Defendants intentionally intruded upon the private affairs and matters of Plaintiffs and Class Members, including by electronic means while they were in private and in their personal quarters, by improperly accessing their personal information and using it for improper purposes, including by targeting them with advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of Plaintiffs and Class Members who reside with advertisements, as detailed herein.

115.    Defendant's intrusions upon the private affairs, conversations, and matters of Plaintiffs and Class Members were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on Defendants by the FTC, and the reforms required by the Order entered by the Court.

116.    As minor children, Plaintiffs and Class Members lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions; their parents and guardians, however, had a reasonable expectation of privacy in their children's online viewing

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

activities, particularly given their children's ages and the nature of the content involved.

117.    Neither Plaintiffs and the Class Members nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

118.    Class Members suffered actual and concrete injury as a result of Defendant's intrusions upon the private affairs, conversations, and matters of and Plaintiffs and the Class Members.

119.    Plaintiffs and Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon the private affairs, concerns, and seclusion of Plaintiffs.

120.    Plaintiffs and Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of Defendants' intrusions upon the private affairs, concerns, and seclusion of Plaintiffs and Class Members.

### THIRD CLAIM FOR RELIEF
**Trespass to Chattels**

121.    Plaintiffs re-allege the foregoing allegations as if fully set forth herein.

122.    Plaintiffs and Class Members have a property interest in their personal information, which is an asset with value that Plaintiffs and Class Members possess.

123.    As a result of the uniform conduct and practices alleged herein, Defendants unlawfully took possession of and commercially exploited Plaintiffs and Class Members, including by using their personal information for purposes of targeted behavioral advertising, without their consent or permission, and without compensating them for the use of their assets.

124.    By intentionally choosing to not designate clearly child-directed content as "made

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

for kids" on YouTube, Defendants enabled and benefited from the surreptitious placement of tracking tools on children's devices through third-party advertising systems. This conduct was done without notice, authorization, or valid parental consent, and was specifically intended to harvest behavioral data from children for advertising and profit.

125.    As a result of the conduct and practices alleged herein, including the unauthorized digital intrusion, Defendants' conduct caused harm, in that it damaged, diminished, impaired, interfered with, and/or destroyed the value of the personal information in which Plaintiffs and Class Members have a possessory interest.

126.    Plaintiffs seek appropriate relief for that injury on behalf of Class Members, including but not limited to (i) damages that will reasonably compensate Class Members for the harm to their interests in their personal information, and (ii) disgorgement of profits made by Defendants as a result of Defendants' intentional interference with the possession of their personal information.

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**

127.    Plaintiffs re-allege the foregoing allegations as if fully set forth herein.

128.    Defendants received a benefit from their collection and use of Plaintiffs' and Class Members' data and personal information, including the ability to deploy targeted advertising to minor children Plaintiffs and Class Members, in violation of state and federal law.

129.    Upon information and belief, Defendants' collection and use of Plaintiffs' and Class Members' Personal Information yielded significant monetary benefit to Defendants. Indeed, Defendants directly profited from its arrangement with YouTube through advertising revenue shared with YouTube and through enhanced audience insights used to further their commercial interests.

130.    Defendants enriched themselves through advertising targeted to Plaintiffs and Class Members, among various means. Defendants' enrichment came at the direct expense of Plaintiffs and Class Members, whose privacy was compromised and whose personal data was

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

wrongfully used to generate corporate profit.

131.    Plaintiffs and Class Members were harmed by the benefit to Defendants, because their privacy was violated and their Personal Information collected in contravention of law and social norms in a way that would be unconscionable to a reasonable person.

132.    Defendants should be compelled to disgorge the profits they accumulated as a result of their unjust and unlawful collection and use of Plaintiffs' and Class Members' personal information.

133.    Plaintiffs seek restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants as a result of their unlawful conduct.

### FIFTH CLAIM FOR RELIEF
**Negligence and Negligence *Per Se***

134.    Plaintiffs re-allege the foregoing allegations as if fully set forth herein.

135.    Disney owed a duty of care to children who viewed its content to safeguard their privacy and personal information.

136.    Disney was required to comply with applicable privacy laws designed to protect children, including COPPA, and to take reasonable steps to protect children's personal information from unlawful collection and use.

137.    Disney owed a higher duty of care to children than to an ordinary consumer because of children's lack of capacity to appreciate and avoid risks.

138.    Disney knew or should have known that its content was viewed primarily by children under the age of 13, and that failure to properly designate such content as "made for kids" would result in the collection of young viewers' personal information, including persistent identifiers such as cookies and IP addresses, without verifiable parental consent.

139.    Disney negligently failed to appropriately mark child-directed videos and therefore failed to prevent the collection and use of children's personal data for targeted advertising purposes.

140.    Disney failed to implement or maintain policies, procedures, or oversight

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

mechanisms as needed to comply with COPPA.

141.    Disney's failure to act with reasonable care directly enabled the unlawful harvesting of children's personal information, exposing millions of children to commercial exploitation and violating their statutory right to privacy.

142.    Defendants also had independent duties under state and federal laws that required Defendants to ensure that personal information of children was not collected without parental consent.

143.    Defendants violated COPPA by failing to designate child-directed videos as "made for children," resulting in the unauthorized collection and use of their personal information. Defendants' conduct was particularly unreasonable given the notice that was given to Disney by YouTube that Disney was not in compliance with COPPA as of the summer of 2020.

144.    Defendant's violation of COPPA constitutes negligence *per se.*

145.    As a direct and proximate result of Disney's negligent actions and/or Disney's violation of COPPA, Plaintiffs and Class Members suffered injury, including the collection, exposure, and exploitation of their intimate personal information.

146.    Plaintiffs seek restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants as a result of their unlawful conduct.

## VII.    REQUEST FOR RELIEF

Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court:

147.    Determine that the claims alleged herein may maintained as a class action under Federal Rule of Civil Procedure 23 and enter an order certifying the Class defined above and appointing Plaintiffs as Class representatives.

148.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled.

149.    Award pre-judgment and post-judgment interest as provided by law.

150.    To the extent an adequate remedy at law does not exist, grant appropriate equitable relief to which Plaintiffs and Class members are entitled.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

151.    Award reasonable attorneys' fees and costs as permitted by law; and

152.    Grant such other and further relief as the Court deems appropriate.

## VIII.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

Respectfully submitted this 10th day of September, 2025.

EMERY | REDDY, PLLC

By:    */s/ Timothy W. Emery*
By:    */s/ Patrick B. Reddy*
By:    */s/ Paul Cipriani*
By:    */s/ Brook Garberding*
Timothy W. Emery, WSBA No. 34078
Patrick B. Reddy, WSBA No. 34092
Paul Cipriani, WSBA No. 59991
Brook E. Garberding, WSBA No. 37140
Emery Reddy, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106
Fax: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
Email: paul@emeryreddy.com
Email: brook@emeryreddy.com
*Attorneys for Plaintiffs*